UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

JEREMY Q.,[1]                                                    Case No. 6:19-cv-00383-MK

                Plaintiff,                                    **OPINION**
**AND ORDER**

    v.

COMMISSIONER, Social Security
Administration,

                Defendant.
_____

**Kasubhai,** United States Magistrate Judge:

Plaintiff Jeremy Q. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying his application for supplemental

security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act

(the "Act"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42

U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and

judgment in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. §

636(c). *See* ECF No. 14. For the reasons that follow, the Commissioner's final decision is

REVERSED and this case is REMANDED for an immediate calculation and payment of

benefits.

---

[1] In the interest of privacy, the Court uses only the first name and last name initial of non-
government parties whose identification could affect Plaintiff's privacy.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for SSI in March 2013 and DIB in May 2013 with an alleged onset date of January 1, 2008.[2] Tr. 23. Plaintiff's claims were ultimately denied, and he sought judicial review before this Court in September 2016. *See* Tr. 508–18; *see also Jeremey Q. vs. Berryhill*, No. 6:16-cv-01884-PK ("*Jeremy Q. I*"). Conceding error, the Commissioner agreed to a stipulated remand, which the Court granted in November 2017. *Id.*; *Jeremy Q. I*, ECF Nos. 28–30. Upon remand, the Appeals Council vacated the Administrative Law Judge's ("ALJ") previous decision denying Plaintiff's claims, and remanded the case with instructions to properly consider the evidence of record and to obtain additional expert medical opinion, if necessary, in March 2018. Tr. 532–34.

On November 7, 2018, Plaintiff appeared for an additional administrative hearing. Tr. 410–52. On January 3, 2019, an ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 386–97. Because the Appeals Council did not assume jurisdiction as prescribed by regulation, the ALJ's decision operates as the final decision of the Commissioner subject to this Court's review. *See* 20 C.F.R. §§ 404.984(a), 4161484(a) (explaining that "when a case is remanded by a Federal court for further consideration, the decision of the administrative law judge will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case"). Plaintiff's timely appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 20 years old at his alleged onset date. Tr. 396. He was given up for adoption by his mother, who subsequently died from substance abuse, and lived in foster care until he and

---

[2] "Tr." citations are to the Administrative Record. ECF No. 9.

his siblings were adopted. Tr. 737; *see also* Tr. 327. Plaintiff attended public schools, until his anxiety and paranoia prompted his parents to home-school him for the remainder of high school. *Id*. He earned a modified diploma in 2005. *Id.* Plaintiff alleges disability based on mental health impairments, including paranoia. Tr. 201

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must

establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity since his alleged onset date. Tr. 388–89. At step two, the ALJ found that Plaintiff had the following severe impairments:  anxiety disorder, affective disorder, schizophrenia, and borderline intellectual functioning. Tr. 389. At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of a listed impairment. *Id*. The ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels, with the following non-exertional limitations:

> [H]e can perform simple, routine tasks with a General Educational Development (GED) reasoning level of two or less. He can tolerate only occasional contact with supervisors and coworkers. He cannot participate in team-based work activity. He can tolerate no contact with the general-public.

Tr. 391.

At step four, the ALJ found that Plaintiff had no past relevant work as defined by the regulations. Tr. 395. At step five, the ALJ found, in light of Plaintiff's age, education, work experience, and RFC, a significant number of jobs existed in the national economy such that Plaintiff could sustain employment despite his impairments. Tr. 396. The ALJ thus found Plaintiff was not disabled within the meaning of the Act. Tr. 397.

**DISCUSSION**

Plaintiff asserts that remand is warranted for three reasons: (1) the ALJ erred by improperly rejecting Plaintiff's subjective symptom testimony; (2) the ALJ failed to identify legally sufficient bases to reject lay witness statements; and (3) the ALJ erred in weighing the medical opinion evidence. The Court addresses each argument in turn.

## I.    Subjective Symptom Testimony

Plaintiff assigns error to the ALJ's evaluation of his subjective symptom testimony. Pl.'s Op. Br. at 12–15, ECF No. 15. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion [that] the claimant is not credible is insufficient; instead, the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the

evidence in an individual's record when evaluating the intensity and persistence of symptoms.[3] SSR 16-3p, *available at* 2016 WL 1119029, at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

The ALJ rejected Plaintiff's subjective symptom testimony on the grounds that the while Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's "statements concerning the intensity, persistence and limiting effect of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. 392. The Commissioner asserts the ALJ supplied three valid rationales that undermined Plaintiff's subjective complaints:  (A) a lack of support in the record; (B) the treatment record itself; and (C) his activities of daily living.

## A.    Lack of Support in the Record

The Commissioner asserts the medical evidence did not support Plaintiff's claimed limitations. Def.'s Br. 11–13, ECF No. 21. Although an ALJ may consider the lack of objective evidence in some circumstances, as the Commissioner correctly concedes, it may not be the sole basis for rejecting a claimant's subjective symptom testimony. *See Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001) ("Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely

---

[3] Effective March 28, 2016, SSR 16-3p superseded and replaced SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p.

on a lack of objective medical evidence to fully corroborate the alleged severity of pain.")
(internal quotation marks and brackets omitted).

The Commissioner directs the Court to a March 2015 consultative diagnostic evaluation
conducted by Susan South, Psy.D., who wrote that Plaintiff, *inter alia*, presented as casually
dressed, cooperative with adequate eye contact, clear speech, fair judgment, and low to average
intelligence. *See* Def.'s Br. 12–13 (citing Tr. 338–45). Other than parroting the ALJ's summary
of the medical evidence, however, the Commissioner fails to articulate how any of Dr. South's
observations undermined Plaintiff's subjective complaints. The Ninth Circuit has rejected
reliance on substantially similar reports. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir.
2014) (rejecting an ALJ's reliance of the claimant's "good eye contact, organized and logical
thought content, and focused attention" because "[t]hese observations of cognitive functioning
during therapy sessions [did] not contradict [the claimant's] reported symptoms of depression
and social anxiety"); *see also Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which
symptom testimony is not credible and what facts in the record lead to that conclusion.")
(citation omitted).[4]

As such, this was not a clear and convincing rationale to reject Plaintiff's subjective
symptom testimony.

---

[4] The Commissioner's additional reliance on mental status exams where Plaintiff presented with
"alertness, orientation, a somewhat disheveled appearance, with casual dress with low average
grooming and hygiene, a pleasant and cooperative demeanor with grossly intact social skills,
intact cognition, a generally intact memory and attention, generally intact insight and judgment,
and generally coherent and linear thought process, but variable concentration, and below average
intellectual functioning" fails for the same reason. Def.'s Br. 13–14 (citing Tr. 393). *See Ghanim*,
763 F.3d at 1164; *cf. Claire G. v. Berryhill*, No. 3:18-cv-00492-HZ, 2019 WL 2287733, at *10
(D. Or. May 28, 2019) ("Simply pointing to the instances of noted normal or bright mood do not,
without a more thorough discussion, show a contradiction between [a claimant's] testimony and
the medical record.") (citation omitted).

**B.    Course of Treatment**

The Commissioner next asserts the ALJ properly rejected Plaintiff's testimony based on conservative treatment and noncompliance. Def.'s Br. 15–16. The ALJ noted that Plaintiff had "been prescribed medication, but never taken them" and that his "treatment [had] been very conservative, largely over-the-counter and prescription medication." Tr. 393–94.

In some circumstances, a claimant's treatment record can form the basis upon which to reject a claimant's testimony. *See, e.g., Parra v. Astrue,* 481 F.3d 742, 750–51 (9th Cir. 2007) (noting that "conservative treatment" was sufficient to discount the claimant's testimony regarding allegedly disabling pain); *Molina v. Astrue*, 674 F.3d 1104, 1113–14 (9th Cir. 2012) ("[A] claimant's failure to assert a good reason for not seeking treatment . . . can cast doubt on the sincerity of the claimant's pain testimony.") (citation omitted). However, adjudicators are required to consider "any explanations that the individual may provide, or other information in the case record, that may explain" the claimant's failure to follow a treatment plan. *Orn*, 495 F.3d at 638 (quotation omitted).

Here, the ALJ failed to consider the impact of Plaintiff's mental health impairments on his course of treatment. As one examining doctor observed when discussing Plaintiff's distress concerning medications:  "I do suspect however, underlying paranoia and anxiety contributes to his desire not to be compliant with treatment." Tr. 744; *see also* Tr. 422–23 (hypothesizing that Plaintiff's lack of medication compliance and counseling "have to do with [] paranoid feelings that he has and certainly the agoraphobia"). Moreover, as the Ninth Circuit has instructed:  "it is a questionable practice to chastise one with a mental impairment for the exercise of poor

judgment in seeking rehabilitation." *Garrison v. Colvin,* 759 F.3d 995, 1018 n.24 (9th Cir. 2014)

(internal quotation marks omitted).[5]

As such, the treatment record was not a clear and convincing reason to reject Plaintiff's

testimony.

**C.    Activities of Daily Living**

Finally, the Commissioner contends the ALJ properly rejected Plaintiff's testimony based

upon his activities of daily living. Def.'s Br. 16–17. Activities of daily living can form the basis

for an ALJ to discount a claimant's testimony in two ways:  (1) where the activities "contradict

[a claimant's] testimony"; or (2) as evidence a claimant can work if the activities "meet the

threshold for transferable work skills." *Orn*, 495 F.3d at 639. A claimant, however, need not be

utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities

is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050

(9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the

level of activity to be inconsistent with the claimant's alleged limitations to be relevant to her

credibility).

---

[5] Plaintiff's reluctance to attend group therapy sessions also fails to justify rejection of his testimony as he explained that he was willing to attend one-on-one counseling, but his insurance plan only covered group sessions, and that he could not "do groups at all." Tr. 443–44. Social Security regulations and Ninth Circuit case law establish that an inability to afford treatment or access low cost medical services are a legitimate reason for not seeking medical treatment. *See* SSR 16-3; *Trevizo v. Berryhill*, 871 F.3d 664, 681 (9th Cir. 2017) ("Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds.") (citation omitted); *see also Regennitter v. Comm'r SSA*, 166 F.3d 1294, 1296 (9th Cir. 1999) ("Although we have held that 'an unexplained, or inadequately explained failure to seek treatment can cast doubt on the sincerity of a claimant's pain testimony,' we have proscribed the rejection of a claimant's complaint for lack of treatment when the record establishes that the claimant could not afford it.").

The ALJ cited Plaintiff's ability to perform adequate self-care, prepare simple meals, complete household chores, and go to the store, which he concluded "indicate[d] a higher level of functioning than that alleged by" Plaintiff. Tr. 394. The Ninth Circuit, however, has consistently held that such a modest level of activity is not sufficient to reject subjective complaints. *See Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

Moreover, the ALJ's discussion of Plaintiff's daily activities failed to explain "what symptom testimony [was] not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *see also Dodrill*, 12 F.3d at 918. As this Court has recently observed an "ALJ's mere recitation of a claimant's activities is insufficient to support rejection of the claimant's testimony as a matter of law." *Jessica E. v. Comm'r, Soc. Sec. Admin.*, No. 3:19-cv-00224-MK, 2020 WL 2083963, at *6 (D. Or. Apr. 30, 2020) (citation omitted). In other words, other than generally summarizing Plaintiff's activities, the ALJ failed to explain how any of the listed activities undermined his subjective symptom testimony. Therefore, this was not a clear and convincing reason to reject Plaintiff's testimony. *See id.*

In sum, the ALJ failed to supply clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. The ALJ is reversed as to this issue.

## II.    Lay Witness Testimony

Plaintiff assigns error to the ALJ's evaluation of the lay witness statements. Pl.'s Op. Br. 15–16. Lay witness testimony regarding the severity of a claimant's symptoms or how an

impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). To reject such testimony, an ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r*, 807 F.3d 996, 1007 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1114 (remaining citation omitted)). Further, the reasons provided must also be "specific." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009)). However, where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the ALJ's failure to provide germane reasons for rejecting lay testimony can be harmless. *Molina*, 674 F.3d at 1121–22.

The record contains two lay witness statements submitted by Plaintiff's partner, Kristie T., and adoptive mother, Susan Q. Tr. 229–36 (Kristie T.); 674–82 (Susan Q.). The ALJ assigned "some weight" to the restricted activities of daily living described in the statements, but failed to explicitly reject the remainder of the statements concerning how Plaintiff's mental health impairments impact his ability to function. Tr. 395.

The Commissioner asserts any error was harmless because the lay witness statement "mirrored" Plaintiff's subjective symptom testimony, which the ALJ properly rejected. However, as discussed above, the ALJ failed to supply legally sufficient reasons for rejecting Plaintiff's subjective complaints. Accordingly, the ALJ's failure to explicitly reject the remaining portions of lay witness statements was harmful error. The ALJ is reversed as to this issue.

## III.    Medical Evidence

Plaintiff contends that the ALJ improperly assessed the medical evidence of record. Pl.'s Op. Br. 6–12. The ALJ is responsible for resolving conflicts in the medical record, including

conflicting doctors' opinions. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The law distinguishes between the opinions of three types of physicians:  treating physicians, examining physicians, and non-examining physicians. *See* 20 C.F.R. §§ 404.1527, 416.927.[6] The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another doctor can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Where a doctor's opinion is contradicted, however, the ALJ must provide "specific, legitimate reasons" for discrediting the opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). An ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quotation omitted).

## A.    Scott T. Alvord, Psy.D.

Dr. Alvord performed two psychological evaluations of Plaintiff in 2015 and 2018, which entailed reviewing Plaintiff's medical records as well as conducting clinical interviews, mental status exams, and a battery of tests to measure Plaintiff's mental acuity. Tr. 743–63; 772–89. Dr. Alvord found that Plaintiff had personality disorder with "paranoid and OCD traits," panic disorder with agoraphobia, depressive disorder, learning disorder, and a borderline IQ. Tr. 775, 748. In the most recent Mental Residual Functional Capacity ("MRFC") report, Dr. Alvord found, *inter alia*, that Plaintiff was markedly limited in his ability interact with supervisors and

---

[6] The Commissioner has issued revised regulations changing this standard for claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Plaintiff's claim was filed before March 27, 2017, and therefore is controlled by 20 C.F.R. §§ 404.1527, 416.927.

to understand, remember, and carry out complex instructions.[7] Tr. 778. The doctor also concluded that Plaintiff would have difficulty maintaining regular attendance in the workplace and would have difficulty "completing a normal workday/workweek without interruptions from a psychiatric condition." Tr. 749.

The ALJ assigned Dr. Alvord's opinions partial weight. Tr. 395. The ALJ accepted the doctor's diagnoses, finding they were consistent "with the overall medical evidence of record." However, the ALJ rejected the doctor's conclusion that Plaintiff would "have difficulty sustaining a workday," reasoning there was little evidence in the record to support the limitation "other than [Plaintiff's] complaints regarding being 'uncomfortable.'" *Id.*

The ALJ's rejection of the opinion fails for lack of specificity. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 n.2 (9th Cir. 2006) (noting that without a "reference to the record" the court was left to speculate as to the ALJ's reasoning). Critically, the ALJ's decision failed to cite to any portion of the record in rejecting the doctor's opinion. *See* Tr. 395. As the Ninth Circuit has explained, to meet the specific and legitimate standard required to reject a contradicted doctor's opinion, an ALJ "must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citation omitted); *see also Beckett v. Comm'r, Soc. Sec. Admin.*, No. 3:09-cv-01052-JO, 2011 WL 4006644, at *2–3 (D. Or. Sept. 6, 2011) ("The Ninth Circuit repeatedly has explained that conclusory reasons will not justify an ALJ's rejection of a medical opinion[.]") (citation and quotation marks omitted). The ALJ failed to do so here.

---

[7] The MRFC defined "markedly limited" as follows:  "There is serious limitation in this area. There is a substantial loss in the ability to effectively function." Tr. 777.

The Court declines the Commissioner's invitation to consider portions of Dr. Alvord's opinions not relied upon by the ALJ. Def.'s Br. 7. *See Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). But even if the Court were to consider the records, it is unclear how Plaintiff's statements about his anxiety and paranoia, as well as feeling uncomfortable around people, in anyway undermine Dr. Alvord's conclusions he would struggle to maintain attendance and complete a workday. *See* Tr. 744, 749.

Finally, the Court is unpersuaded by the Commissioner's additional *post hoc* assertion that the ALJ translated Dr. Alvord's opinion into Plaintiff's RFC. Def.'s Br. 7–8. A review of the ALJ's decision makes clear that the ALJ expressly rejected Dr. Alvord's conclusion that Plaintiff would have difficulty sustaining a workday, and this Court is "constrained to review the reasons the ALJ asserts[.]" *See Burrell. Colvin,* 775 F.3d 1133, 1141 (9th Cir. 2014) (citation omitted); *see also* Tr. 395. This is precisely why in such circumstances an ALJ should set "out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings" to reject an examining doctor's opinion. *See Garrison*, 759 F.3d at 1012.

As such, the ALJ failed to supply legally sufficient reasons for rejecting Dr. Alvord's conclusion that Plaintiff would have difficulty sustaining a workday.

**B.    John B. Nance, Ph.D.**

Dr. Nance testified as a medical expert during the administrative hearing held in November 2018. Tr. 416–35. Prior to testifying, Dr. Nance reviewed the totality of the medical

record, which included two psychological evaluations from Dr. Alvord as well as psychological

reports from Douglas Smith, Ph.D., and Susan South Psy.D. *Id.*; *see also* Tr. 338–45; 735–42;

743–63; 772–89. At the hearing, the doctor opined, *inter alia*, that Plaintiff had marked

limitations "in terms of adapting or managing one's self[.]" Tr. 422.

The ALJ gave partial weight to Dr. Nance's opinion, finding it was generally consistent

with the overall medical record. Tr. 394. However, the ALJ rejected Dr. Nance's limitation that

Plaintiff was markedly limited in his ability to adapt and manage himself, reasoning "the record

demonstrate[d] that [Plaintiff] essentially lives independently and has frequently presented to

medical and psychological appointments without difficulty. Furthermore, this opinion is not fully

consistent with the third-party reports that show the claimant has no difficulty with self-care." *Id.*

Similar to the rejection of Dr. Alvord's opinion, the ALJ again failed to cite to any

specific portion of the record in support of his reasoning. That failure alone constitutes grounds

for reversal. *See Robbins*, 466 F.3d at 884 n.2; *Beckett*, 2011 WL 4006644, at *2–3.

The Commissioner asserts the ALJ's reference to "relatively benign appointments"

elsewhere in the decision justifies the rejection of Dr. Nance's opinion. Def.'s Br. 8–9. The

argument, however, is an additional impermissible *post hoc* rationalization upon which this

Court may not affirm. *See Bray,* 554 F.3d at 1225. In any event, a review of the treatment notes

cited by the Commissioner demonstrates that Plaintiff presented with serious mental health

impairments. For example, upon examination in April 2011, Plaintiff presented with a depressed

mood and thoughts of worthlessness and his anxiety caused avoidant tendencies, poor attention,

and he reported feeling "tension and sweaty." Tr. 288–89. Approximately one month later,

Plaintiff reported "symptoms of paranoia, depression, and concentration difficulties that [were]

impairing relational and occupational functioning." Tr. 293. In January 2015, Plaintiff was

assessed with panic disorder and agoraphobia, which caused a "racing heart, sweaty hands, shortness of breath, chest pains," the "chills and hot flashes" to the point he thought "he [was] going crazy." Tr. 329. Accordingly, Plaintiff's presentation at appointments was not a specific and legitimate reason to reject Dr. Nance's opinion.

The Commissioner next contends the ALJ permissibly rejected Dr. Nance's opinion based on conflicting reports as to Plaintiff's living situation and romantic history. Def.'s Br. 10. Again, this reasoning was not supplied by the ALJ and is therefore not properly before this Court. *See Bray,* 554 F.3d at 1225. To the extent the Commissioner offers this evidence in defense of the ALJ's unsupported assertion that Plaintiff "lived independently," the Court fails to see the relevance of who Plaintiff was living with—or whether he had been romantically involved in the past—as to Dr. Nance's opined limitations. As the ALJ noted in his decision, Dr. Nance had "the opportunity to review the entire medical file" in forming his opinion and the Court has no basis to conclude that the doctor did not testify accurately. Tr. 394. Finally, an independent review of the record reflects that Plaintiff did not live independently during the period at issue and received assistance in both settings. *See, e.g.*, Tr. 441 (explaining that Plaintiff moved in "with [his] dad" who was "helping [him] right now and going through all this"); Tr. 327 (Kristie T., who Plaintiff lived with at the time, attending medical appointment with Plaintiff and assisting him in developing bio-psycho-social history). As such, neither Plaintiff's living situation nor his romantic history were appropriate reasons to discount the doctor's opinion.

The ALJ's final rationale—that Dr. Nance's opinion was not fully consistent with the third-party statements that reported Plaintiff had no difficulty with self-care—also fails to justify the rejection of the doctor's opinion. Plaintiff's limited ability to dress, bathe, shave, feed

himself, and use the toilet is not inconsistent with Dr. Nance's opinion. *Compare* Tr. 230 (listing Plaintiff's basic "self-care" abilities), *and* Tr. 675 (same), *with* Tr. 422–23 (Dr. Nance explaining the basis for his opinion). Moreover, a review of both third-party statements demonstrates that Plaintiff is quite limited. *See, e.g.*, Tr. 232 (explaining that Plaintiff requires "at least 1 person" to accompany him when he leaves the house); *id.* (explaining that Plaintiff cannot count change, handle a savings account, or use a checkbook); Tr. 265 (explaining that Plaintiff "breaks down emotionally" when stressed and responds poorly to changes in his routine); Tr. 676 (explaining that Plaintiff requires reminders to take showers, change clothes, and complete basic household chores); *see also* Tr. 298 (reporting "significant difficulties independently attending to . . . personal hygiene"). The ALJ thus failed to supply legally sufficient reasons for rejecting Dr. Nance's opinion that Plaintiff was markedly limited in his ability adapt and manage himself.

In sum, the ALJ failed to supply legally sufficient reasons for rejecting the medical opinions of Drs. Alvord and Nance. The ALJ's evaluation of the medical evidence is reversed and this case must be remanded.

## IV.    Remand

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether:  (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful

purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all of the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id*. at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell*, 775 F.3d at 1141 (internal quotation marks omitted)).

Here, the first requisite is met based on the ALJ's harmful legal errors. As discussed above, the ALJ failed to provide legally sufficient reasons for discrediting Plaintiff's subjective symptom testimony, portions of the lay witness statements, and the medical opinion evidence.

As to the second requisite, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). In *Treichler*, the court relied on "significant factual conflicts in the record between [the claimant's] testimony and objective medical evidence" to conclude remanding for further proceedings was the appropriate remedy. *Id*. at 1105. Specifically, the claimant testified that he would lose control of his bladder during the day, though treatment notes indicated the issue occurred only at night. *Id*. He also testified that he experienced fecal incontinence, but the single medical report discussing the issue stated that the claimant complained of constipation and denied problems with fecal incontinence. *Id*. The claimant further testified that he had

debilitating pain twice a week, though he reported to a physician that his pain medication made life tolerable and testified that medication alleviated a lot of the pain. *Id*. Based on these significant conflicts, the court concluded that a remand for further proceedings was the appropriate remedy. *Id*. at 1107.

Here, by contrast, the medical evidence of record is consistent with Plaintiff's testimony. The record contains multiple psychodiagnostics evaluations and includes the testimony of a medical expert the ALJ enlisted to assist in evaluating "the nature and severity of and functional limitations resulting from [Plaintiff's] impairments." Tr. 534; *see also* Tr. 338–45; 735–42; 743– 63; 772–89.

The Commissioner asserts that remand is required to resolve evidentiary conflicts in the record. Def.'s Br. 19–20. Specifically, the Commissioner asserts that Plaintiff's adoptive mother's statements about his ability to pay attention and inability to follow or understand instructions are in tension with the medical opinion evidence. *Id.* The Court finds any purported conflicts not significant. *Treichler* compels remanding for further proceedings only where there are *significant* factual conflicts between the claimant's testimony and the objective medical evidence—not lay witness statements. *Treichler*, 775 F.3d at 1105. The Commissioner also points to purported inconsistent statements regarding Plaintiff's living situation, romantic history, and whether Plaintiff had been laid off or fired from his last job. Def.'s Br. 20. The Court similarly finds those purported conflicts immaterial because they have no bearing on the Court's crediting-as-true the erroneously rejected medical evidence.

Furthermore, especially given the fact that Plaintiff initially appealed the denial of his claims to this Court nearly four years ago, the Court finds that remanding to allow the Commissioner a third attempt to reject Plaintiff's testimony and medical opinions of record

would not serve a "useful purpose." *See Garrison*, 759 F.3d at 1021 (citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.")); *see also Jeremy Q. I*, ECF No. 1. Accordingly, the Court finds the record has been fully developed and further proceedings would serve no useful purpose.

As to the third requisite, if the discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled on remand. Crediting the limitations contained Dr. Alvord's opinions as true compels a finding of disability based on the vocational expert ("VE") testimony. *Compare* Tr. 749 (Dr. Alvord opining that Plaintiff would have difficulty maintaining regular attendance in the workplace and would have difficulty "completing a normal workday/workweek without interruptions from a psychiatric condition"), *with* Tr. 448–49 (VE testifying that an individual who regularly missed two days of work per month "would be beyond the toleration for employer's expectations for attendance" and that an individual off task "about 5 percent of the time" "would not be able to keep their job"); *Trevizo*, 871 F.3d at 683 (crediting the claimant's testimony and medical opinions as true combined with VE testimony established disability, making remand for immediate payment of benefits appropriate).

If a court concludes, as in this case, that a claimant meets the three criteria of the credit-as-true standard, the improperly discredited evidence is credited as true and remand for an award of benefits is appropriate unless "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled with the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1020–21 (citations omitted). Considering the record as a whole, the Court concludes that there is no reason for serious doubt as to whether Plaintiff is disabled. *See id.* at 1021; *see also Revels v. Berryhill*, 874 F.3d 648, 668 n.8 (9th Cir. 2017) (explaining that where each of the credit as true

factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled") (citing *Garrison*, 759 F.3d at 1021). Moreover, the Commissioner has not "pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether Plaintiff is disabled under the Act. *Dominguez*, 808 F.3d at 407. As such, the Court exercises its discretion and credits the erroneously discredited evidence as true and remands this case for an immediate calculation and payment of benefits.

## CONCLUSION

For the reasons discussed above, the Commissioner's decision was not based on substantial evidence. Accordingly, the Commissioner's decision is REVERSED and this case REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for an immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 3rd day of June 2020.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI
United States Magistrate Judge